**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X

JM HUNTINGTON MOTORS, LLC d/b/a
HUNTINGTON FORD LINCOLN,

                      Plaintiff,              **REPORT AND RECOMMENDATION**

    v.                                        20-cv-01282 (JS) (ST)

EDUARD KAVALERCHIK,

                      Defendant.
-------------------------------------------------------------X

**TISCIONE, United States Magistrate Judge:**

      Plaintiff JM Huntington Motors, LLC d/b/a Huntington Ford Lincoln ("Plaintiff") commenced this action against Defendant Eduard Kavalerchik ("Defendant") on March 9, 2020, alleging claims under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq*. ("CFAA"), and New York State law.  Defendant has failed to answer or otherwise respond to Plaintiff's Complaint, and Plaintiff has filed a Motion for Default Judgment against Defendant.  The Honorable Joanna Seybert referred Plaintiff's Motion to the undersigned to issue a Report and Recommendation.

      For the reasons set forth below, this Court respectfully recommends that Plaintiff's Motion for Default Judgment be GRANTED IN PART and DENIED IN PART.

    **I.   BACKGROUND**

        **a.  Factual Background**

      Plaintiff is a New York limited liability company that owns and operates a car dealership located at 333 West Jericho Turnpike, Huntington, New York 11743.  Compl. ¶ 2.  Defendant is an individual who resides in Suffolk County, New York.  *Id.* ¶ 3.  Plaintiff employed Defendant as a general manager from November 2, 2018 until on or about July 2, 2019.  *Id.* ¶ 7.

On August 9, 2019, Defendant leased a 2019 Ford Fusion from Plaintiff. *Id.* ¶ 9. The lease documents included a Customer Cash Payment Authorization Form (the "Form"). *Id.* ¶ 10. Defendant signed the Form and thus assigned to Plaintiff credits and incentives (the "Incentives") totaling $13,257.00, for which Defendant was eligible in connection with the lease. *Id.* ¶¶ 10-11. Per the Form, the Incentives were reflected as a capital cost reduction on Defendant's lease agreement. *Id.* ¶¶ 10, 12.

On or about August 20, 2019, Defendant logged into Ford Motor Company's system and modified the details of the payee of the Incentives to state Defendant's name and address. *Id.* ¶ 13. As a result, the Incentives were paid to Defendant instead of Plaintiff. *Id.* In September 2019, Plaintiff discovered that Defendant diverted the Incentives to Defendant's own bank account. *Id.* Upon making this discovery, Plaintiff demanded repayment of the Incentives. *Id.* ¶ 14. Defendant has not paid. *Id.*

### b. Procedural History

Plaintiff commenced this action against Defendant on March 9, 2020, asserting claims for computer fraud under the CFAA, and breach of contract, quantum meruit, unjust enrichment, and conversion under New York State law. *See generally id.* Plaintiff served Defendant on March 20, 2020. Summons Returned Executed, Dkt. No. 6. Defendant failed to answer or otherwise respond to Plaintiff's Complaint. Plaintiff filed a Request for Certificate of Default on May 13, 2020, pursuant to which the Clerk of Court entered default against Defendant on May 14, 2020. *See generally* Req. Certificate Default, Dkt. No. 8; Clerk's Entry Default, Dkt. No. 9.

Before the Court now is Plaintiff's Motion for Default Judgment, filed on May 29, 2020. *See generally* Mem. Supp. Mot. Default J. ("Mot."), Dkt. No. 10-1. The Motion seeks compensatory and punitive damages, litigation costs, and pre-judgment and post-judgment

interest. *See id.* at 4-5. In support of its Motion, Plaintiff also submits the Declaration of Gregory C. Brown Jr., who is Plaintiff's attorney, and the Declaration of Justin Haynes, who is Plaintiff's general manager. *See generally* Decl. Gregory C. Brown Jr. ("Brown Decl."), Dkt. No. 10-2; Decl. Justin Haynes ("Haynes Decl."), Dkt. No. 10-7.

## II.   LEGAL STANDARD

Rule 55 of the Federal Rules of Civil Procedure establishes the two-step process for a plaintiff to obtain a default judgment. First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Second, after a default has been entered against a defendant, and the defendant fails to appear or move to set aside the default under Rule 55(c), the Court may, on plaintiff's motion, enter a default judgment. Fed. R. Civ. P. 55(b)(2). In light of the Second Circuit's "oft-stated preference for resolving disputes on the merits," default judgments are "generally disfavored." *Enron Oil Corp. v. Diakuhara,* 10 F.3d 90, 95–96 (2d Cir. 1993). "Accordingly, just because a party is in default, the plaintiff is not entitled to a default judgment as a matter of right." *Mktg. Devs., Ltd. v. Genesis Imp. & Exp., Inc.*, No. 08-CV-3168 (CBA) (CLP), 2009 WL 4929419, at *2 (E.D.N.Y. Dec. 21, 2009) (citing *Erwin DeMarino Trucking Co. v. Jackson*, 838 F. Supp. 160, 162 (S.D.N.Y. 1993)).

On a motion for default judgment, the Court "is required to accept all of the [plaintiff's] factual allegations as true and draw all reasonable inferences in its favor." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) (citing *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)). In determining whether to issue a default judgment, the Court has the responsibility to ensure that plaintiff's "allegations establish [defendant's] liability as a matter of law." *Id.*; *accord City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011). In other words,

3

"after default . . . it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *Rolls–Royce PLC v. Rolls–Royce USA, Inc.*, 688 F. Supp. 2d 150, 153 (E.D.N.Y. 2010) (citation omitted).

## III.  DISCUSSION

### a. Jurisdiction

This Court has jurisdiction because Plaintiff's claims arise in part under the CFAA. 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the . . . laws . . . of the United States."). In a "civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ." *Id.* § 1367(a). This Court may therefore exercise supplemental jurisdiction over Plaintiff's claims arising under New York State law.

Venue is proper because a substantial part of the events and omissions underlying this lawsuit occurred in this district. *Id.* §1391(b).

### b. Default

Despite being properly served by Plaintiff, Defendant failed to answer or otherwise respond to Plaintiff's Complaint. *See* Summons Returned Executed. In response to Plaintiff's Request for Certificate of Default, the Clerk of Court entered Default against Defendant. *See* Req. Certificate Default; Clerk's Entry Default. Thus, per the standard provided by Federal Rule of Civil Procedure 55(a), Defendant is properly considered to have admitted all factual allegations in the Complaint and is subject to this Court's assessment of its liability thereby.

### c. Liability

#### i. Computer Fraud

Plaintiff alleges Defendant violated the CFAA.  Compl. ¶¶ 15-20.  18 U.S.C. § 1030(g) creates a civil cause of action against an individual whose conduct "involves 1 of the factors set forth in" §§ 1030(c)(4)(A)(i)(I)-(V).  These factors contemplate the results of "an offense under subsection 1030(a)(5)(B)," that is, "intentionally access[ing] a protected computer without authorization, and as a result of such conduct, recklessly caus[ing] damage."  *See* 18 U.S.C. §§ 1030(a)(5)(B), (c)(4)(A)(i).  For example, the statute allows a plaintiff to recover economic damages if a defendant who committed an offense under § 1030(a)(5)(B) caused "loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value."  *Id.* §§ 1030(c)(4)(A)(i)(I), (g).  The statute defines "loss" as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service."  *Id.* § 1030(e)(11).  Further, courts interpreting the statute have explained that "loss" has "consistently meant a cost of investigating or remedying damage to a computer, or a cost incurred because the computer's service was interrupted."  *Nexans Wires S.A. v. Sark-USA, Inc.*, 319 F. Supp. 2d 468, 475 (S.D.N.Y. 2004), *aff'd*, 166 F. App'x 559, 562-63 (2d Cir. 2006); *see also In re DoubleClick Inc. Privacy Litig.*, 154 F. Supp. 2d 497, 521 (S.D.N.Y. 2001) (stating, "Congress intended the term 'loss' to target remedial expenses borne by victims that could not properly be considered direct damage caused by a computer hacker").

According to Plaintiff, Defendant "without authorization accessed Plaintiff's computers" and "knowingly caused the transmission of a program, information, code, or command and, as a

5

result of such conduct, recklessly and intentionally caused damage to Plaintiff, which has a value exceeding five thousand dollars ($5,000.00) in a one-year period, in violation of 18 U.S.C. §§ 1030(a)(5)(A)-(C)." Compl. ¶¶ 17, 19. Plaintiff appears to contend that Defendant's conduct implicates § 1030(c)(4)(A)(i)(I), quoted above.[1] However, Plaintiff does not allege that it suffered a loss in connection with its response to Defendant's accessing its computers. Nor does Plaintiff allege it incurred a loss due to an interruption in service. Accordingly, Plaintiff does not show that Defendant's conduct caused it to suffer a loss, as defined by the statute, of at least $5,000.00 in a one-year period. Plaintiff's CFAA claim thus fails. *See Quintero v. Wells Fargo Bank N.A.*, 17-cv-03932, 2018 WL 6437548, at *3 (E.D.N.Y. Oct. 15, 2018) (citations omitted) (finding plaintiffs lack standing under CFAA where they do not allege loss related to remedying violation or interruption of service), *adopted by* 2018 WL 6421055 (E.D.N.Y. Dec. 6, 2018).

### ii. Breach of Contract

Plaintiff alleges breach of contract under New York State law. Compl. ¶¶ 21-25. A party alleging breach of contract must demonstrate: (1) the existence of an agreement; (2) adequate performance of the contract by the plaintiff; (3) breach of contract by the defendant; and (4) damages. *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168 (2d Cir. 2004).

Here, as part of the lease, Defendant signed the Form and assigned to Plaintiff payment of all Incentives for which Defendant was eligible in connection with the lease. Compl. ¶ 10;

---

[1] The Court notes that Plaintiff does not specifically state which of the factors in subsections 1030(c)(4)(A)(i)(I)-(V) describes the results of Defendant's conduct. Based upon the allegations in the Complaint, only § 1030(c)(4)(A)(i)(I) applies because Plaintiff makes no allegations concerning: medical diagnosis, examination, treatment, or care; physical injury; a threat to public health or safety; or damage affecting a computer used by or for an entity of the United States Government in furtherance of the administration of justice, national defense, or national security. *See* 18 U.S.C. §§ 1030(c)(4)(A)(i)(II)-(V).

Haynes Decl. ¶¶ 7-9; *see* Haynes Decl., Ex. 2. Plaintiff performed its obligations under the Form, as the Incentives were applied as a capital cost reduction to the lease agreement. Compl. ¶ 22; Haynes Decl. ¶ 10. Defendant breached the Form by diverting payment for the Incentives from Plaintiff to Defendant. Compl. ¶ 23; Haynes Decl. ¶¶ 11-12. As a result of the breach, Plaintiff suffered damages in the amount of the Incentives diverted, $13,257.00. Compl. ¶ 11, 24. Accordingly, Plaintiff has established that Defendant is liable for breach of contract. *See Singer Asset Fin. Co., LLC v. Melvin*, 822 N.Y.S.2d 68, 69-71 (App. Div. 2006) (finding breach of contract where defendant assigned settlement payments to plaintiff, third-party payor did not promptly honor assignment, and defendant did not forward payments to plaintiff-assignee).

### iii.  Quantum Meruit and Unjust Enrichment

Plaintiff brings state law claims for quantum meruit and unjust enrichment. Compl. ¶¶ 26-36. Under New York law, a court "may analyze quantum meruit and unjust enrichment [claims] together as a single quasi contract claim." *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 175 (2d Cir. 2005) (citations omitted). Quantum meruit and unjust enrichment are "non-contractual, equitable remedies that are inapplicable if there is an enforceable contract governing the subject matter." *R.B. Ventures, Ltd. v. Shane*, 112 F.3d 54, 60 (2d Cir. 1997). These claims may be alleged in the alternative to a breach of contract claim if there is a dispute as to "whether a contract's provisions cover the subject matter in question." *Magnotti v. Crossroads Healthcare Mgmt., LLC*, 126 F. Supp. 3d 301, 316 (E.D.N.Y. 2015); *see also Feingold v. Chrismas*, 818 F. Supp. 2d 763, 769 (S.D.N.Y. 2011) (explaining unjust enrichment may be claimed in the alternative to breach "only . . . where there is some question as to whether the contract is valid"). This is not the case here. Plaintiff bases its breach of contract claim on an express agreement, the Form, and does not raise any issues as to the

7

validity and enforceability of the Form.  Accordingly, Plaintiff's quasi-contract claim fails.  *See, e.g.*, *In re Navidea Biopharmaceuticals Litig.*, 19-CV-1578 (VEC), 2019 WL 718711, at *10 (S.D.N.Y. Dec. 26, 2019) (dismissing quantum meruit claim where neither party alleged contract was invalid or unenforceable); *Magnotti*, 126 F. Supp. 3d at 316 (dismissing quasi-contract claims where there is no dispute that contract governed subject matter in question); *Ainbinder v. Money Ctr. Fin. Grp., Inc.*, CV 10-5270 (SJF) (AKT), 2013 WL 1335997, at *8 (E.D.N.Y. Feb. 28, 2013) (finding that unjust enrichment claim fails where express contract governs matter).

### iv.     Conversion

Plaintiff alleges conversion under New York State law.  Compl. ¶¶ 37-40.  Conversion is "the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights."  *Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 403-04 (2d Cir. 2006).  The two key elements of conversion are: "(1) plaintiff's possessory right or interest in the property and (2) defendant's dominion over the property or interference with it, in derogation of plaintiff's rights."  *Quintero*, 2018 WL 6437548, at *3 (citations omitted).  "While money may properly be the subject of a conversion action under certain circumstances, a cause of action for conversion will be dismissed if it is duplicative of a cause of action for breach of contract, even if a plaintiff meets all the elements of conversion."  *Newman v. Mor*, 08 CV 658 (RJD) (CLP), 2009 WL 890552, at *4 (E.D.N.Y. Mar. 31, 2009); *see also Ainbinder*, 2013 WL 1335997, at *9 ("[a] conversion claim may only succeed if the party alleges a wrong that is distinct from any contractual obligations") (citation omitted).  "In determining whether a conversion claim is duplicative of a breach of contract claim, courts look both to the material facts upon which each claim is based and to the alleged injuries for which damages are

8

sought." *AD Rendon Commc'ns, Inc. v. Lumina Ams., Inc.*, 04-CV-8832 (KMK), 2007 WL 2962591, at *5 (S.D.N.Y. Oct. 10, 2007).

      Here, Plaintiff's claims for breach and conversion are duplicative. First, both are grounded in Defendant's diversion of the Incentives. *Compare* Compl. ¶ 23 ("Defendant breached . . . [the Form] by unlawfully diverting payment for the Incentives (for which Plaintiff was legally entitled) to Defendant's own bank account."), *with id.* ¶ 38 ("Defendant intentionally and improperly exercised control over property and assets belonging to Plaintiff by diverting the Incentives (which were payable to Plaintiff) to Defendant's own bank account."), *and id.* ¶ 39 ("Through Defendant's diversion of the Incentives, Defendant has exercised dominion and control over personal property belonging to Plaintiff, which interfered with Plaintiff's right of possession to same."); *see, e.g.*, *Speedfit LLC v. Chapco Inc.*, 15-CV-1323 (JMA) (SIL), 2016 WL 5793738, at *9-10 (E.D.N.Y. June 29, 2016) (dismissing conversion claim as duplicative of breach of contract claim where both causes allege defendant took design specifications of plaintiff's product and manufactured its own product), *adopted by* 2016 WL 5678812 (E.D.N.Y. Sept. 30, 2016); *AD Rendon Commc'ns*, 2007 WL 2962591, at *5 (dismissing conversion claim as duplicative of breach of contract claim where both causes allege "[defendant] wrongfully transferred money from [plaintiff's] account without authorization and failed to return all of the money it took, that it accepted a refund check that should have been given to [plaintiff], and that it retained money that it should have forwarded for a media buy"). Importantly, Plaintiff was entitled to the Incentives only as a result of the Form, that is, by contract. *See* Compl. ¶¶ 10-11; *Citadel Mgmt., Inc. v. Telesis Tr., Inc.*, 123 F. Supp. 2d 133, 150 (S.D.N.Y. 2000) (finding "[plaintiff] tacitly admits that it is essentially seeking to enforce its contractual rights [via its conversion claim] by referring to the Agreement as the source of its rights to the funds").

Second, whether under a theory of contract or tort, Plaintiff seeks damages on the same alleged injury. Plaintiff's Motion seeks compensatory damages of $13,257.00, the amount it is due on the Form; Plaintiff's counsel further clarifies that this amount reflects the Incentives "that Defendant assigned to Plaintiff." Mot. at 4; Brown Decl. ¶ 9. In asserting its entitlement to compensatory damages "for the Incentives," Plaintiff does not distinguish among its claims but rather cites cases in which parties prevailed on the same causes of action brought by Plaintiff and were awarded compensatory damages. Mot. at 4; *see OTG Brands, LLC v. Walgreen Co.*, 13-cv-09066 (ALC), 2015 WL 1499559, at *9 (S.D.N.Y. Mar. 31, 2015) (dismissing conversion claims because, among other reasons, "[plaintiff's] conversion claims . . . plainly derive from the same injuries and damages sought in their breach of contract . . . claim[]").[2]

Given the foregoing, Plaintiff's conversion claim fails.

### d. Damages

"[I]t is well established that '[w]hile a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages.'" *Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012) (quoting *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)). If liability is established as to a

---

[2] Though Plaintiff's Motion also seeks punitive damages in connection with its conversion claim, contending Defendant acted with malice when he diverted the funds, "a breach of contract—even an 'intentional' or 'malicious' breach of contract—does not give rise to a tort action." *AD Rendon Commc'ns*, 2007 WL 2962591, at *8 (quoting *Mayer v. Morgan Stanley & Co.*, 703 F. Supp. 249, 253 (S.D.N.Y. 1988)); *see* Mot. at 4. The instant action is distinct from *St. John's University, New York v. Bolton*, 757 F. Supp. 2d 144 (E.D.N.Y. 2010), to which Plaintiff cites in its Motion. Mot. at 4. The *St. John's* court found plaintiff's conversion claim was not duplicative of its contract claim where the plaintiff sought punitive damages in connection with its conversion claim *and* defendants deliberately violated their "duty to inform [plaintiff] of the value of their research and resulting patents." *St. John's Univ.*, 757 F. Supp. 2d at 178-79 ("a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated." (quoting *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 516 N.E.2d 190, 193 (N.Y. 1987))). Here, Plaintiff has not shown that Defendant owed or violated a legal duty separate from its obligations under the Form.

defaulting defendant, the plaintiff must then establish damages to a "reasonable certainty." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999). The Court "may conduct hearings or make referrals . . . when, to enter or effectuate judgment, it needs to . . . determine the amount of damages [or] establish the truth of any allegation by evidence." Fed. R. Civ. P. 55(b)(2). However, the Court is not required to hold a hearing if the party seeking damages submits "[d]etailed affidavits and documentary evidence" in support of its request. *Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 53-54 (2d Cir. 1993) (citing *Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 508 (2d Cir. 1991); *Fustok v. Conti-Commodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989)).

In light of this standard, the Court will evaluate Plaintiff's requests for compensatory damages, punitive damages, litigation costs, pre-judgment interest, and post-judgment interest.

### i. Compensatory Damages

Damages "for breach of contract should put the plaintiff in the same economic position he would have been in had the defendant fulfilled the contract." *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 262 (2d Cir. 2002) (citing *Indu Craft, Inc. v. Bank of Baroda*, 47 F.3d 490, 495 (2d Cir. 1995)). Plaintiff has shown it is entitled to damages of $13,257.00, the value of the Incentives payments Defendant assigned to Plaintiff by signing the Form. Accordingly, the Court respectfully recommends Plaintiff be awarded $13,257.00 in compensatory damages.

### ii. Punitive Damages

Plaintiff seeks punitive damages on its conversion claim. Mot. at 4-5. As discussed, Plaintiff's conversion claim fails. Accordingly, the Court respectfully recommends Plaintiff's request for punitive damages be denied.

### iii. Litigation Costs

11

Plaintiff seeks litigation costs of $569.95.  Mot. at 5.  A prevailing party may recover "reasonable costs."  *Arch Specialty Ins. Co. v. All Island Bldg. & Restoration Inc.*, 19-cv-2396 (JS) (SIL), 2020 WL 6321964, at *4 (E.D.N.Y. May 2, 2020) *adopted by* 2020 WL 4783357 (E.D.N.Y. Aug. 18, 2020); *see also* Fed. R. Civ. P. 54(d)(1).  Plaintiff provides a declaration by its attorney stating that, in litigating this action, Plaintiff incurred a $169.95 process service fee and a $400.00 filing fee.  *See* Brown Decl. ¶ 11.  Plaintiff submits an invoice for the process service fee and the docket shows Plaintiff paid the filing fee.  *See* Brown Decl., Ex. D; Dkt. No. 1.  Accordingly, this Court respectfully recommends Plaintiff be awarded $569.95 in costs.

### iv.  Pre-Judgment Interest

Plaintiff seeks pre-judgment interest.  Mot. at 5.  New York law provides for pre-judgment interest upon a sum awarded because of a breach of contract, to be calculated "from the earliest ascertainable date the cause of action existed."  N.Y. C.P.L.R. § 5001.  Interest accrues at a rate of nine percent per annum.  *Id.* § 5004.

Here, Plaintiff is entitled to interest from the date that Defendant breached by diverting the Incentives, August 20, 2019.  Plaintiff is entitled to $13,257.00 for Defendant's breach.  Accordingly, the Court respectfully recommends Plaintiff be awarded pre-judgment interest accruing at a rate of $3.29 per day from August 20, 2019 until the date judgment is entered.

### v.  Post-Judgment Interest

Plaintiff seeks post-judgment interest.  Mot. at 5.  Post-judgment interest "shall be allowed on any money judgment in a civil case recovered in a district court."  28 U.S.C. § 1961(a).  Thus, the Court respectfully recommends awarding Plaintiff post-judgment interest, to be calculated from the date the Clerk of Court enters judgment in this action until the date of payment, at the rate set forth in 28 U.S.C. § 1961.

## IV. CONCLUSION

For the foregoing reasons the Court respectfully recommends Plaintiff's Motion for Default Judgment be GRANTED IN PART, and that Plaintiff be awarded damages against Defendant as follows: compensatory damages in the amount of $13,257.00; litigation costs in the amount of $569.95; pre-judgment interest accruing at a rate of $3.29 per day from August 20, 2019 until the date judgment is entered; and post-judgment interest to be calculated at the rate set forth in 28 U.S.C. § 1961.  The Court respectfully recommends that Plaintiff's request for punitive damages be DENIED.

## V. OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections.  Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals.  *See Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018); *McConnell v. ABC-Amega, Inc.*, 338 F. App'x 24, 26 (2d Cir. 2009); *Tavarez v. Berryhill*, No. 15-CV-5141 (CS) (LMS), 2019 WL 1965832, at *30 (S.D.N.Y. May 1, 2019); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

**SO ORDERED.**

                        /s/
                  Steven L. Tiscione
                  United States Magistrate Judge
                  Eastern District of New York

Dated: Central Islip, New York
         February 19, 2021